IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CAROLYN C. RITCHIE,                )    CIVIL 14-00046 LEK-BMK
                                   )
          Plaintiff,               )
                                   )
     vs.                           )
                                   )
THE STATE OF HAWAI`I,              )
DEPARTMENT OF PUBLIC SAFETY;       )
and NEAL WAGATSUMA, in his         )
official capacity as Warden        )
of the Kauai Community             )
Correctional Center,               )
Department of Public Safety,       )
State of Hawai`i, and in his       )
individual capacity,               )
                                   )
          Defendants.              )
_____    )

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

     On July 3, 2014, Defendants State of Hawai`i,

Department of Public Safety ("DPS") and Neal Wagatsuma, in his

official capacity as Warden of the Kauai Community Correctional

Center, DPS, and in his individual capacity ("Wagatsuma,"

collectively "Defendants"), filed their Motion for Judgment on

the Pleadings ("Motion"). [Dkt. no. 34.] Plaintiff Carolyn C.

Ritchie ("Plaintiff") filed her memorandum in opposition on

August 25, 2014, and Defendants filed their reply on August 29,

2014. [Dkt. nos. 36, 37.] This matter came on for hearing on

September 15, 2014. After careful consideration of the Motion,

supporting and opposing memoranda, and the arguments of counsel,

Defendants' Motion is HEREBY GRANTED IN PART AND DENIED IN PART

for the reasons set forth below.  Specifically, the Court

DISMISSES WITH PREJUDICE all counts against Wagatsuma, in his

official capacity; DISMISSES WITH PREJUDICE as to DPS all counts,

except Count I; DISMISSES as to Wagatsuma, in his individual

capacity, WITH PREJUDICE as to Counts I, IV and VII, and WITHOUT

PREJUDICE as to Counts III and IV; and DENIES the Motion in all

other respects.

## BACKGROUND

Plaintiff, who worked as a psychiatric social worker at

Kauai Community Correctional Center ("KCCC") from approximately

April 2009 to November 2012, filed her First Amended Complaint on

February 21, 2014, alleging that she was retaliated against and

constructively discharged after she reported Defendants'

mistreatment of female inmates at KCCC.[1]  [First Amended

Complaint, filed 2/21/14 (dkt. no. 8), at ¶¶ 1, 6.]  Plaintiff

alleges that, in 2009 and 2010, she observed that: the work

furlough program for the Life Time Stand ("LTS") housing section

of KCCC was limited to men; Wagatsuma psychologically abused

female inmates by video-recording "counseling sessions" of female

inmates, in which he forced inmates to discuss private sexual

matters and watch the screening of sexually violent rape films;

---

[1] DPS and Wagatsuma, in his official capacity, filed their
answer on March 17, 2014, and Wagatsuma, in his individual
capacity, filed his answer on March 24, 2014.  [Dkt. nos. 15,
16.]

and these video-recorded sessions were publicly displayed and shown to other inmates. [Id. at ¶¶ 14-15.] Plaintiff alleges that female inmates confided in her about their fear and shame as a result of these "grillings" and, as a result, Plaintiff made repeated verbal and written reports to DPS Mental Health supervisor Mark Mitchell ("Mitchell"), specifically that: the grillings were cruel and unusual; the work furlough program was discriminatory; Wagatsuma violated inmate rights under the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d, *et seq.*; and DPS denied basic mental health services to female inmates. [Id. at ¶¶ 16-18.]

In August 2009, Plaintiff authorized Mitchell to submit the complaints to DPS officials on Oahu, and DPS opened an investigation into the allegations. [Id. at ¶¶ 19-21.] Plaintiff alleges that, upon information and belief, DPS disciplined Wagatsuma and instructed him to discontinue the humiliating and discriminatory behavior. [Id. at ¶ 22.] Plaintiff further alleges that, in late 2010, Wagatsuma removed Plaintiff from KCCC based on a pretextual investigation into allegations that Plaintiff had passed notes between married male and female inmates - a practice that was legal and regularly employed by Plaintiff's male predecessor. [Id. at ¶¶ 23, 25-26.] Plaintiff was suspended with pay during the eighteen-month investigation until, in 2012, it was terminated in her favor.

[Id. at ¶¶ 27, 29.] Plaintiff alleges that in late 2010 she made
multiple reports to the office of the Hawai`i Attorney General
("Attorney General"), and in 2011 and 2012 to the United States
Department of Justice ("Department of Justice"), the Hawai`i
Disability Rights Center ("HDRC"), and the American Civil
Liberties Union ("ACLU"). [Id. at ¶¶ 25, 28.]

After the investigation was resolved in her favor,
Wagatsuma made it difficult for Plaintiff to return to KCCC and
then, when she successfully returned, he targeted her by
soliciting unfavorable letters from inmates against her and
limiting her contact with female inmates. [Id. at ¶¶ 30-33.] In
one incident, Wagatsuma ordered a lockdown "in an effort to
intercept a confidential communication between Plaintiff and one
of her female patients." [Id. at ¶ 34.] Plaintiff also alleges
that she was retaliated against by being denied the ability to
make phonecalls to families on behalf of female inmates. [Id. at
¶¶ 35-36.]

Also in 2012, Plaintiff further complained to Mitchell
that the reporting structure for sexual abuse of female inmates
was insufficient. [Id. at ¶ 37.] In May 2012, Plaintiff alleges
that she began experiencing stress, high blood pressure, and
fatigue and took medical leave. [Id. at ¶ 38.] Plaintiff
further alleges that, on June 20, 2012, she filed charges with
the United States Equal Employment Opportunity Commission

4

("EEOC") and the Hawai`i Civil Rights Commission ("HCRC"), alleging retaliation and, on November 5, 2012, she was constructively discharged due to intolerable work conditions. [<u>Id.</u> at ¶¶ 39-40.] Both the EEOC and HCRC issued Plaintiff right to sue letters thereafter. [<u>Id.</u> at ¶ 43.]

The First Amended Complaint alleges the following claims: unlawful retaliation, pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-1, *et seq*. ("Count I"); First Amendment violation, pursuant to 42 U.S.C. § 1983 ("Count II"); unlawful retaliation, pursuant to Haw. Rev. Stat. § 378-2 ("Count III"); retaliation against a whistleblower, pursuant to Haw. Rev. Stat. § 378-62 ("Count IV"); wrongful termination/constructive discharge ("Count V"); intentional infliction of emotional distress ("Count VI"); and wrongful/termination/constructive discharge in violation of public policy, pursuant to <u>Parnar v. Americana Hotels, Inc.</u>, 65 Haw. 370, 652 P.2d 625 (1982) ("Count VII" or "<u>Parnar</u> Claim"). Plaintiff seeks the following relief: general and/or compensatory damages; special damages; punitive and/or liquidated or exemplary damages against Wagatsuma, individually; attorneys' fees and costs; other legal and equitable relief available under state and federal statutes; and any other appropriate relief. [<u>Id.</u> at pgs. 24-25.]

## STANDARD

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." "Although [Ashcroft v.] Iqbal[, 556 U.S. 662 (2009),] establishes the standard for deciding a Rule 12(b)(6) motion, we have said that Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and that 'the same standard of review' applies to motions brought under either rule." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citations omitted). On a motion for judgment on the pleadings, the court must "accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). "[J]udgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law[.]" Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) (citation and internal quotation marks omitted).

## DISCUSSION

Defendants move for judgment on all counts, against all defendants, in all capacities. As an initial matter, Plaintiff concedes that she cannot bring Count I for violation of Title VII against Wagatsuma, in either his official or individual capacity,

[Mem. in Opp. at 11-12 (citing Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993)),] or Count II for First Amendment violation, pursuant to 42 U.S.C. § 1983, against DPS or Wagatsuma, in his official capacity [id. at 21 (citing Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989))]. The Court GRANTS the Motion on these grounds, and DISMISSES WITH PREJUDICE Count I against Wagatsuma, in both his official and individual capacities, and Count II against DPS and Wagatsuma, in his official capacity, because it is clear that these shortcomings "could not be saved by any amendment." Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (citation and internal quotation marks omitted).

Further, Plaintiff clarifies that she is not pursuing her state law claims, Counts III through VII, against DPS or Wagatsuma, in his official capacity, before this Court.[2] [Mem. in Opp. at 9-10.] Thus, the Court GRANTS the Motion as to those Counts, and DISMISSES WITH PREJUDICE Counts III through VII against DPS and Wagatsuma, in his official capacity. See Calhoun v. Dep't of Corr., 402 F. App'x 196, 197 (9th Cir. 2010) ("Eleventh Amendment bars suits in federal court against states on the basis of violations of state law" (citing Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973-74 (9th Cir. 2004)); Flint

---

[2] At the hearing, Plaintiff's counsel expressly stated that he was reserving Plaintiff's right to bring these claims in state court.

7

v. Dennison, 488 F.3d 816, 824-25 (9th Cir. 2007) ("'[A] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself.'" (some alterations in Flint) (quoting Will, 491 U.S. at 71, 109 S. Ct. 2304)).

Last, Plaintiff does not oppose the Motion as to Count V, for wrongful termination/constructive discharge, and the Court therefore GRANTS the Motion as to this count. The Court thus DISMISSES WITHOUT PREJUDICE Count V against Wagatsuma, in his individual capacity. See Harris, 573 F.3d at 737 ("Dismissal without leave to amend is improper unless it is 'clear' that the complaint could not be saved by any amendment.") (citation and internal quotation marks omitted)).

After Plaintiff's concessions, what remains of the First Amended Complaint is Count I against DPS, and Counts II, III, IV, VI, and VII against Wagatsuma, in his individual capacity. The Court considers each of these claims in order, as follows.

## I.    Count I Against DPS

Defendants argue that Plaintiff does not state a Title VII retaliation claim against DPS because Plaintiff did not engage in protected activity, and any belief that she was engaging in protected activity was unreasonable.

8

"To establish a prima facie case, the employee must show that he engaged in a protected activity, he was subsequently subjected to an adverse employment action, and that a causal link exists between the two." Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011).  "Conduct constituting a 'protected activity' includes filing a charge or complaint, testifying about an employer's alleged unlawful practices, and 'engaging in other activity intended to oppose an employer's discriminatory practices.'"  E.E.O.C. v. Global Horizons, Inc., 904 F. Supp. 2d 1074, 1088 (D. Hawai`i 2012) (quoting Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003)).

"It is not necessary, however, that the employment practice actually be unlawful; opposition clause protection will be accorded whenever the opposition is based on a **reasonable belief** that the employer has engaged in an unlawful employment practice." Moyo v. Gomez, 32 F.3d 1382, 1384-85 (9th Cir. 1994) (emphasis in Moyo) (citation omitted); see also E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 967 (9th Cir. 2009) ("In order to constitute protected activity, a complaint must be based on an employee's 'reasonable belief' that he is reporting conduct that violates Title VII." (citation omitted)).

Defendants argue, and this Court agrees, that the vast majority of the allegations in the First Amended Complaint and Plaintiff's EEOC charge, [Reply, Decl. of Anthony "T.J." Quan,

9

Exh. 1 (EEOC Charge of Sexual Discrimination, Declaration of Carolyn Ritchie ("EEOC Charge")),] relate to discrimination against female KCCC inmates. These allegations, they argue, are not protected nor could they reasonably be believed to be protected under Title VII. This Court disagrees. While Plaintiff's allegations regarding the abusive counseling sessions cannot reasonably be believed to relate to employment discrimination, Plaintiff's complaints regarding the work furlough program can be.

To survive a motion to dismiss, a complaint must simply contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 at 678. At this early stage in the litigation, Plaintiff has pled sufficient facts that the inmates may have been employees for the purposes of Title VII or, at least, that she thought they were covered. Defendants' attempt to distinguish Moyo on this point is unpersuasive.

In Moyo, a corrections officer alleged that he was fired for refusing to enforce a prison practice of allowing white inmates to shower after work, but not black inmates. 32 F.3d at 1384. The district court dismissed the claim, but the Ninth

Circuit reversed based on three independent grounds.[3] Although the court drew the distinction between compensated and work release labor on one hand, which might be covered by Title VII, and forced labor on the other, which was clearly not, the court held that it could not "say with certainty from the face of the complaint either 1) that the inmates were not 'employees' under Title VII, or 2) that, even if they were not, Moyo could not have reasonably believed that a violation of Title VII occurred." Id. at 1385-86.

Consistent with Moyo, this Court cannot ascertain from the face of the First Amended Complaint whether the work that inmates at KCCC participated in was voluntary or forced. See, e.g., First Amended Complaint at ¶ 14 ("Women in the LTS program were not given the same **opportunity** for work furlough as men." (emphasis added)); EEOC Charge at 2 ("Those inmates selected by the warden to enlist in [LTS] live in the cabins surrounding the main prison . . . [and] are eligible for work furlough **outside the prison** . . . ." (emphasis added)). Further, there is nothing in the First Amended Complaint that would lead the Court to infer that Plaintiff did not hold a good faith belief that the KCCC inmates were covered under Title VII. Thus, insofar as Plaintiff

_____

[3] The first ground was that Moyo might show that enforcing the discriminatory practice was a condition of his own employment, Moyo, 32 F.3d at 1385, which is not at issue in this case.

11

reported discrimination in the work furlough program, Plaintiff

states a claim that she engaged in protected behavior.

Moreover, although the focus of the First Amended

Complaint and EEOC Charge is on the inmates, Plaintiff does state

a claim for disparate treatment against her as a basis for her

complaints.  Specifically, Plaintiff alleges:

> 23.  In late 2010, Defendant Wagatsuma ordered
> Plaintiff removed from working at KCCC under the
> pretext of a "pending investigation."  The
> investigation was prompted by an allegation that
> Plaintiff had passed a note between a male
> Detainee and his wife, a female Detainee.
>
> . . . .
>
> 25.  At the time the pre-textual investigation was
> launched against Plaintiff, KCCC and the DPS did
> not have any rules or regulations which prohibited
> KCCC social workers from passing notes between
> male and female Detainees. . . .
>
> 26.  Plaintiff's predecessor at the KCCC, John Winnes,
> frequently assisted married Detainees in this same
> manner without objection from Defendant Wagatsuma.
> Mr. Winnes would pass notes between married
> Detainees without repercussions.  Mr. Winnes also
> held group discussions in the female quarters of
> the modules.  Defendant Wagatsuma prohibited
> Plaintiff from engaging in the same practice.

[First Amended Complaint at ¶¶ 23-26.]  These allegations, at the

very least, state a claim for disparate treatment against

Plaintiff based on her gender that could form a basis for the

retaliation claim.  See Hawn v. Executive Jet Mgmt., Inc., 615

F.3d 1151, 1156 (9th Cir. 2010) (describing elements of a

disparate treatment claim).  Therefore, the Court DENIES the

Motion insofar as Plaintiff states a plausible claim that:
(1) she engaged in protected activity by complaining on behalf of
those female inmates discriminated against in not receiving work
furlough; (2) even if they were not covered employees, she held a
good faith and reasonable belief she was engaging in protected
activity in complaining on behalf of the inmates denied
employment opportunities; and (3) she engaged in protected
activity by complaining about disparate treatment from male
psychiatric social workers at KCCC.

## II.  Counts Against Wagatsuma in His Individual Capacity

### A.  Count II (Section 1983)

"'To state a claim under § 1983, a plaintiff must
allege two essential elements: (1) that a right secured by the
Constitution or laws of the United States was violated, and (2)
that the alleged violation was committed by a person acting under
the color of State law.'"  Esparza v. Cnty. of Los Angeles, 527
F. App'x 638, 639 (9th Cir. 2013) (quoting Long v. Cnty. of Los
Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006)).  Further, "[t]o
state a First Amendment claim against a public employer, an
employee must show: (1) the employee engaged in constitutionally
protected speech; (2) the employer took adverse employment
action' against the employee; and (3) the employee's speech was a
'substantial or motivating factor for the adverse action."
Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 803 (9th Cir.

2009) (citations and internal quotation marks omitted).

Plaintiff alleges that she made complaints about the treatment of female inmates to Mitchell and DPS in 2009 and 2012, to the Attorney General in 2010, and to the Department of Justice, the HDRC, the ACLU, the EEOC, and the HCRC in 2012, [First Amended Complaint at ¶¶ 17-21, 24, 28, 37, 39,] and that, as a result, Wagatsuma first initiated a pretextual investigation, then singled Plaintiff out and made it difficult for her to do her job and, ultimately, constructively discharged her [id. at ¶¶ 23-24, 30-36, 38, 40]. Defendants argue that Plaintiff does not state an actionable First Amendment claim because her complaints were not protected because they were "part of her job duties to report alleged psychological abuse to her mental health supervisors."[4]  [Reply at 7.]

---

[4] Defendants also argue that Plaintiff cannot prove the second and third elements, regarding adverse action and causation of her First Amendment claim.  First, they argue that all of the complaints, except the initial one, were made by Plaintiff after she was already being investigated, and thus the complaints could not have caused any adverse action.  Second, they argue that the investigation was not an adverse employment action because it was consistent with Plaintiff's collective bargaining rights.  The Court rejects these arguments because Plaintiff states a plausible claim that she was wrongfully singled out for the investigation, and that the series of adverse acts resulted from Plaintiff's continued complaints on behalf of herself and female inmates.  While Plaintiff may not be able to carry her burden at summary judgment, viewing the allegations in the light most favorable to Plaintiff, see Fleming, at 581 F.3d at 925, she states a claim as to these elements.

Although this is a close question, the Court disagrees. It is not clear to the Court, in particular, from the pleadings that making internal reports of psychological abuse of inmates is, in fact, part of Plaintiff's job duties. While the Court recognizes that the inmates' general psychological health was her responsibility, reporting abuse at the hands of her superior is likely not, and certainly not reporting it to outside agencies.

Both parties cite to <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006), to support their positions. In <u>Ceballos</u>, the United States Supreme Court held that a deputy district attorney did not engage in protected speech when he wrote a disposition memorandum to his supervisors, questioning misrepresentations in an affidavit by the Los Angeles County Sheriff's Department, because "his expressions were made pursuant to his duties as a calendar deputy." 547 U.S. at 421. However, the Supreme Court limited its holding, explaining that, since the parties did not dispute that the attorney was acting pursuant to his job duties, it had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." <u>Id.</u> at 424.

<u>Freitag v. Ayers</u>, 468 F.3d 528, 535 (9th Cir. 2006), in which the Ninth Circuit applied <u>Ceballos</u>, is instructive on this point. In <u>Freitag</u>, a female corrections officer brought suit, alleging that her First Amendment rights had been violated when

15

she was pretextually investigated after reporting sexual

harassment by male inmates to her supervisors, and contacting a

California State Senator Richard Polanco and the California

Office of the Inspector General ("IG").  On appeal, the state

defendants argued that Freitag did not speak "as a citizen" and

thus her speech was not protected.  The Ninth Circuit explained:

> Under Ceballos, Freitag does not lose her right to
> speak as a citizen simply because she initiated
> the communications while at work or because they
> concerned the subject matter of her employment.
> [126 S. Ct.] at 1959.  The critical inquiry is
> instead whether Freitag engaged in the relevant
> speech "pursuant to [her] official duties."  126
> S. Ct. at 1960.  With respect to her contact with
> Senator Polanco and the IG, the answer is "No."
> It was certainly not part of her official tasks to
> complain to the Senator or the IG about the
> state's failure to perform its duties properly,
> and specifically its failure to take corrective
> action to eliminate sexual harassment in its
> workplace.  Rather, it was Freitag's
> responsibility as a citizen to expose such
> official malfeasance to broader scrutiny.
> Accordingly, in these instances, for purposes of
> the First Amendment she spoke as a citizen.

Freitag, 468 F.3d at 545 (alterations in Freitag) (footnote

omitted).  Further, on remand, the district court found that a

letter Frietag wrote to the director of the California Department

of Corrections and Rehabilitation was protected speech, and the

Ninth Circuit affirmed this conclusion.  See Freitag v. Cal.

Dep't of Corr., 289 F. App'x 146, 147 (9th Cir. 2008).

While Freitag is not identical to this case, it shows

that, based on the allegations in the First Amended Complaint,

Plaintiff may have a valid First Amendment claim for reporting "official malfeasance" – sexual discrimination and harassment of female inmates – at the hands of KCCC, up and out of the chain of command. See Freitag, 468 F.3d at 545; see also Dahlia v. Rodriquez, 735 F.3d 1060, 1075 (9th Cir. 2013) ("if a public employee raises within the department broad concerns about corruption or systemic abuse, it is unlikely that such complaints can reasonably be classified as being within the job duties of an average public employee, except when the employee's regular job duties involve investigating such conduct, e.g., when the employee works for Internal Affairs or another such watchdog unit"), *cert. denied*, 134 S. Ct. 1283 (2014). The Court thus DENIES the Motion as to Count II against Wagatsuma, in his individual capacity.

B.  **Count III (Violation of Haw. Rev. Stat. § 387-2)**

Defendants argue that Plaintiff is foreclosed by the Hawai`i Supreme Court's decision in Lales v. Wholesale Motors Co., 133 Hawai`i 332, 328 P.3d 341 (2014), from bringing Count III against Wagatsuma, in his individual capacity. [Mem. in Supp. of Motion at 12-13.] The Court agrees.

Plaintiff brings Count III under Haw. Rev. Stat. § 378-2(2), which provides:

It shall be an unlawful discriminatory practice:

. . .

17

> (2) For any employer, labor organization, or
> employment agency to discharge, expel, or
> otherwise discriminate against any individual
> because the individual has opposed any
> practice forbidden by this part or has filed
> a complaint, testified, or assisted in any
> proceeding respecting the discriminatory
> practices prohibited under this part[.]

Section 378-1 defines an "employer" as "any person, including the State or any of its political subdivisions and any agent of such person, having one or more employees, but shall not include the United States."  It also defines "person" as "any person, including the State or any of its political subdivisions and any agent of such person, having one or more employees, but shall not include the United States."  Id.

In Lales, a car salesman brought, *inter alia*, discrimination and retaliation claims under Chapter 378 (as well as a Parnar claim) against his former employer, JN Automotive Group ("JN"), and his supervisor, Gary Marxen ("Marxen").  The Hawai`i Supreme Court held that Lales's claims against Marxen failed as a matter of law because Chapter 378 does not apply against individual employees.  Lales, 133 Hawai`i at 343-44, 328 P.3d at 352-53.  The court held that § 378-2(2) limits liability to "employers," and an individual employee, such as a supervisor, cannot be an "employer" within the definition supplied by § 378-1.  Id. at 344-45, 328 P.3d at 353-54.  The court based its interpretation of these sections on: its reading of the statute as a whole and a comparison with sections that clearly and

18

expressly anticipate individual employee liability, *i.e.*, the
subsection on aiding and abetting, <u>see</u> *infra*; the legislative
history of the statute; and federal courts' limitation on
individual employee liability in the similar and persuasive
Title VII context. <u>Id.</u> at 345-48, 328 P.3d 354-57. The court
concluded that, "[i]ndividual employees are therefore not
personally liable as 'employers' for . . . retaliation claims"
under § 378-2(2). <u>Id.</u> at 344, 328 P.3d at 353.

In an attempt to refashion Count III in her memorandum
in opposition, Plaintiff argues that she states a claim against
Wagatsuma as an aider and abettor pursuant to Haw. Rev. Stat.
§ 378-2(3). [Mem. in Opp. at 19-21.] The Court rejects this
change in position, and finds that Plaintiff has not described
how Wagatsuma aided, abetted, incited, compelled, or coerced
discrimination by DPS or other employees sufficient to state a
plausible claim under § 378-2(3). Further, Defendants are
correct that it is legally untenable for Plaintiff to claim that
Wagatsuma aided and abetted himself, since he is the sole
individual actor in the First Amended Complaint. <u>See, e.g.</u>, <u>Park</u>
<u>v. Oahu Transit Servs., Inc.</u>, CV NO 10-00445-DAE, 2011 WL
3490190, at *8 (D. Hawai`i Aug. 10, 2011) ("the Individual
Defendants may not be held liable under § 378-2(3) for any
discriminatory behavior they may have conducted themselves,
because they cannot be liable for aiding and abetting

[themselves]") (alteration in <u>Park</u>) (citation and internal quotation marks omitted)).  For these reasons, the Court GRANTS the Motion as to Plaintiff's retaliation claim, and DISMISSES Count III against Wagatsuma in his individual capacity.  The dismissal is WITHOUT PREJUDICE insofar as Plaintiff can conceivably state a claim under § 378-2(3) for aiding and abetting others in retaliation against Plaintiff.

### C.    <u>Count IV (Violation of Haw. Rev. Stat. § 378-62)</u>

<u>Lales</u> also forecloses Count IV, for retaliation against a whistleblower in violation of the Hawai`i Whistleblower Protection Act ("HWPA").  Haw. Rev. Stat. § 378-62 provides in full:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> > (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
> >
> > > (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or
> > >
> > > (B) A contract executed by the State, a political subdivision of the State, or the United States, unless the employee knows that the report is false; or
> >
> > (2) An employee is requested by a public body

20

to participate in an investigation, hearing,
or inquiry held by that public body, or a
court action.

Similar to § 378-1, Haw. Rev. Stat. § 378-61 defines "employer"
as "a person who has one or more employees. Employer includes an
agent of an employer or of the State or a political subdivision
of the State." Also, the statute defines "person" as "an
individual, sole proprietorship, partnership, corporation,
association, or any other legal entity." Id.

This district court has adopted the reasoning of Lales
in rejecting HWPA claims against individual employees. See
Onodera v. Kuhio Motors Inc., Civil No. 13-00044 DKW-RLP, 2014 WL
1031039, at *7-8 (D. Hawai`i Mar. 13, 2014) ("Accordingly, in
light of Lales, and the extension of its application to the HWPA,
the Court dismisses Count V as against Defendants Rivera and
Mackey individually."). In Onodera, this district court based
the extension of the reasoning in Lales, regarding § 378-2, to
the HWPA based on the similarities in the legislative histories
and the definitions of "employer." Id. (quoting Lum v. Kauai
County Council, 2007 WL 3408003, at *20-21 (D. Haw. Nov. 9,
2007)). Although Hawai`i courts have not ruled on the issue yet,
this Court finds the reasoning in Onodera persuasive. Thus, the
Court GRANTS the Motion as to the HWPA claim, and DISMISSES WITH
PREJUDICE Count V as to Wagatsuma, in his individual capacity.

**D.** **Count VI (Intentional Infliction of Emotional Distress)**

"The elements of intentional infliction of emotional distress ('IIED') pursuant to Hawaii law, are: (1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another." Barber v. Ohana Military Communities, LLC, Civil No. 14-00217 HG-KSC, 2014 WL 3529766, at *10 (D. Hawai`i July 15, 2014) (citing Enoka v. AIG Hawaii Ins. Co., Inc., 128 P.3d 850, 872 (Haw. 2006)).

The Hawai`i Supreme Court has held that the "term 'outrageous' has been construed to mean without just cause or excuse and beyond all bounds of decency." Enoka, 109 Hawai`i at 559, 128 P.3d at 872 (citation and internal quotation marks omitted). "Moreover, extreme emotional distress constitutes, *inter alia*, mental suffering, mental anguish, nervous shock, and other highly unpleasant mental reactions." Id. (citation and internal quotation marks omitted).

Defendants rest on the argument that "the Court in the first instance cannot possibly find anything in the [First Amended Complaint that could rise to the level of outrageous conduct beyond all bounds of decency." [Reply at 11.] Construing the allegations in the First Amended Complaint in the light most favorable to the Plaintiff, she claims that Wagatsuma engaged in an ongoing and malicious vendetta against her, which

cost her job and her health, for reporting him for purportedly humiliating his psychologically vulnerable charges. The Court agrees with Plaintiff that "at this preliminary stage," [Mem. in Opp. at 29,] she states a plausible claim of outrageous conduct. The Court therefore DENIES the Motion as to Count VI against Wagatsuma, in his individual capacity.

**E.    Count VII (Parnar)**

The Court finds that Count VII fails because: a <u>Parnar</u> claim may only be brought against an employer; and Plaintiff's allegations do not bring the claim within the narrow class of cases where <u>Parnar</u> applies.

In <u>Parnar v. Americana Hotels, Inc.</u>, 65 Haw. 370, 652 P.2d 625 (1982), the Hawai`i Supreme Court adopted a common law tort, whereby an individual may bring a claim against an employer if her discharge directly violates clear public policy. The court explained,

> Because the courts are a proper forum for modification of the judicially created at-will doctrine, it is appropriate that we correct inequities resulting from harsh application of the doctrine by recognizing its inapplicability in a narrow class of cases. The public policy exception discussed herein represents wise and progressive social policy which both addresses the need for greater job security and preserves to the employer sufficient latitude to maintain profitable and efficient business operations. We therefore hold that an employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy. In determining whether a clear mandate of public policy is violated, courts should inquire whether

23

the employer's conduct contravenes the letter or
purpose of a constitutional, statutory, or
regulatory provision or scheme.  Prior judicial
decisions may also establish the relevant public
policy.  However, courts should proceed cautiously
if called upon to declare public policy absent
some prior legislative or judicial expression on
the subject.  Of course, the plaintiff alleging a
retaliatory discharge bears the burden of proving
that the discharge violates a clear mandate of
public policy.

Id. at 379-80, 652 P.2d at 631 (footnotes omitted).  "Parnar

claims can only be maintained in a 'narrow class of cases' where

the judicially created wrongful discharge action is needed to

effectuate the public policy at stake."  Cambron v. Starwood

Vacation Ownership, Inc., 945 F. Supp. 2d 1133, 1141-42 (D.

Hawai`i 2013) (citing Ross v. Stouffer Hotel Co., 76 Hawai`i 454,

879 P.2d 1037, 1047 (1994)).

     First, Plaintiff does not state a claim because the

Hawai`i Supreme Court expressly limited the claim to employers:

"We therefore hold that an **employer** may be held liable in tort

where his discharge of an employee violates a clear mandate of

public policy."  65 Haw. at 380, 652 P.2d at 631 (emphasis

added).  As with the § 378-2 and HWPA claims, Wagatsuma was not

Plaintiff's employer.  See supra Sections II.B-C.

     Second, even if Wagatsuma was Plaintiff's employer, the

Court questions whether Plaintiff's Parnar Claim is "needed to

effectuate the public policy at stake."  See Cambron, 945 F.

Supp. 2d at 1142.  Courts generally dismiss Parnar claims where

24

the plaintiffs also have recourse under Title VII and Chapter 378. See, e.g., Patrick v. 3D Holdings, LLC, Civil No. 13-00638 JMS/KSC, 2014 WL 1094917, at *12 (D. Hawai`i Mar. 18, 2014) (citing Hughes v. Mayoral, 721 F. Supp. 2d. 947, 962 (D. Haw. 2010) ("Plaintiff cannot state a claim for wrongful termination in violation of public policy [under Parnar] based on the same conduct as his Title VII and HRS § 378 claims because these statutes already provide a sufficient remedy." (alteration in Patrick))); Ross, 76 Hawai`i at 464, 879 P.2d at 1047 ("By making the discharge of an employee 'because of . . . [his or her] marital status' unlawful, HRS § 378-2(1), and providing a remedial scheme for that discriminatory employment practice, the legislature itself has provided the means for enforcing the public policy that Ross seeks to vindicate through his Parnar claim." (alterations in Ross)).

Plaintiff argues that her constructive discharge "violated clearly established public policies that exist to protect and benefit individuals in custodial detention." [Mem. in Opp. at 20.] Further, she alleges that "it is an obvious public policy to prohibit the State and State prison officials to [sic] from abusing their duties and powers against the very individuals they are charged to oversee and rehabilitate." [Id.]

While the Court recognizes that, if true, Wagatsuma's practices may run afoul of the State's responsibilities to

incarcerated individuals, the Court is not persuaded that the general policies, as described by Plaintiff, fit her claim into the "narrow class of cases" recognized in Parnar.  See Parnar, 65 Haw. at 379, 652 P.2d at 631.  First, Plaintiff does not cite to "a constitutional, statutory, or regulatory provision or scheme" that creates a clear mandate that Defendants have violated.  See id. at 380, 652 P.2d at 631.  Second, even if there were a clear mandate, this policy could be vindicated by Plaintiff's other retaliation claims, at least with regard to her own discrimination and the discriminatory implementation of the work furlough program.  In Lales, the Hawai`i Supreme Court upheld the vacatur of summary judgment for JN as to Lales's Parnar claim because it was not clear whether there were still disputed issues of fact as to that claim.  Lales, 133 Hawai`i at 363, 328 P.3d at 372.  But the court limited its conclusion: "[S]hould the circuit court determine on remand that the public policy claim is indeed derived from HRS chapter 378, such a claim would be barred."  Id. From the First Amended Complaint in the instant case, it appears that the Parnar Claim is "derived from" the other retaliation claims.  Thus, the Court GRANTS the Motion as to Plaintiff's Parnar Claim, and DISMISSES WITH PREJUDICE Count VII against Wagatsuma, in his individual capacity.

## V. **Summary**

The Court therefore GRANTS IN PART AND DENIES IN PART the Motion. The Court DISMISSES WITH PREJUDICE all counts against Wagatsuma, in his official capacity. It DISMISSES WITH PREJUDICE as to DPS all counts, except Count I. As to Wagatsuma, in his individual capacity, the Court DISMISSES WITH PREJUDICE Counts I, IV and VII, and WITHOUT PREJUDICE Counts III and V. It DENIES the Motion in all other respects.

The only remaining claims in the First Amended Complaint are: Count I, for retaliation pursuant to Title VII, against DPS; and Counts II, for violation of Plaintiff's First Amendment rights, and Count VI, for IIED, against Wagatsuma, in his individual capacity.

To the extent that Plaintiff wants to amend the Complaint, she must file a motion for leave to amend by the date set forth in the current Rule 16 Scheduling Order.

## **CONCLUSION**

On the basis of the foregoing, Defendants' Motion for Judgment on the Pleadings, filed July 3, 2014, is HEREBY GRANTED IN PART AND DENIED IN PART.

//

//

//

//

27

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 30, 2014.



                   /s/ Leslie E. Kobayashi
                   Leslie E. Kobayashi
                   United States District Judge

**CAROLYN C. RITCHIE VS. THE STATE OF HAWAI`I, ETC., ET AL; CIVIL 14-00046 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**